KOLLER LAW LLC
By: DAVID M. KOLLER, Esquire
Attorney I.D. No. 90119
2043 Locust Street, Ste. 1B
Philadelphia, PA 19103

UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CASSANDRA BALLARD-CARTER**<br>45 Zummo Way<br>Norristown, PA 19401<br><br>        Plaintiff,<br><br>    v.<br><br>**VANGUARD GROUP, INC.**<br>100 Vanguard Boulevard<br>Malvern, PA 19355<br><br>        Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL NO.<br><br><br><br><br>**JURY TRIAL DEMAND** |

## COMPLAINT

The Plaintiff is Cassandra Ballard-Carter ("Plaintiff"). The Defendant is Vanguard Group, Inc ("Defendant"). This is an employment discrimination lawsuit alleging disability discrimination, a hostile work environment, a failure to accommodate and retaliation in violation of the Americans with Disabilities Act ("ADA").

### THE PARTIES

1. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

2. Plaintiff is a forty-four (44) year old year old African American female who resides at the above captioned address.

3. Plaintiff suffers from dyslexia and is partially deaf so cannot hear out of one of her ears.

4. Defendant is an investment management company that provides investment products and services to institutional and individual investors and is an "employer" within the meaning of the ADA.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory and retaliatory treatment which forms the basis of Plaintiff's allegations in the Complaint.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment which forms the basis of Plaintiff's allegations in the Complaint.

## JURISDICTION AND VENUE

7. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

8. The Court may properly maintain personal jurisdiction over Defendant because of Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

9. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

10. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

11. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant is located in and/or regularly conduct business in this judicial district and because the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

13. Plaintiff exhausted her administrative remedies under Title VII. See Butterbaugh v. Chertoff, 479 F. Supp. 2d 485 (W.D. Pa. 2007).

14. In or about January 9, 2014, Plaintiff filed a timely written Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation in violation of the ADA against Defendant.

15. The Charge was assigned a Charge Number of 530-2014-00450 and was duly filed with the Pennsylvania Human Relations Commission ("PHRC").

16. On or about June 29, 2015, the EEOC issued a Notice of Right to Sue, more than one hundred and eighty (180) days after the date Plaintiff filed her Charge with the EEOC.

17. Prior to the filing of the Complaint, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

18. Upon information and belief, the EEOC advised Defendant of Plaintiff's intent to file suit

and, per the requirements of the ADA for resolution through conciliation, conference, or persuasion, attempted but failed to achieve a voluntary resolution of Plaintiff's claims of employment discrimination.

19. Plaintiff had exhausted her administrative remedies when she filed her Complaint.

20. Plaintiff now files this instant Complaint.

## PLAINTIFF'S EMPLOYMENT HISTORY

21. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

22. Defendant hired Plaintiff in or about June of 1996 as a Processing Associate.

23. In or around January of 2011, Plaintiff was moved to the position of Client Relationship Administrator (acronym "CRA").

24. As a CRA, Plaintiff worked with Defendant's clients' plan sponsors in order to ensure proper ongoing maintenance of client's plans.

25. As a CRA, Plaintiff was assigned responsibility for specific clients and worked on a client team consisting of other CRAs.

26. CRAs like Plaintiff report to Client Administration Managers (Acronym is CAM).

27. During the time period relevant to this matter, Plaintiff reported to CAM Steve Bakey.

28. Prior to reporting to Mr. Bakey, Plaintiff worked without incident.

29. In 2011 and 2012, Plaintiff's performance was excellent in her capacity as a CAM.

30. Plaintiff performed so well that in early 2013, Defendant assigned her the tasks of serving as a lead CRA for one of Defendant's clients.

31. In that capacity, Defendant entrusted Plaintiff with responsibilities that involved extensive written communication with the client.

32. In or around February 26, 2013, Plaintiff spoke to Dena Bailly about her concerns about the way that she was being treated by Mr. Bakey, including, but not limited to, differential treatment, a lack of training and opportunities, the discriminatory and demeaning way Mr. Bakey communicated with Plaintiff, denials of vacation time, and some inappropriate language and comments Mr. Bakey made in the workplace concerning Plaintiff's disabilities.

33. Mr. Bakey berated Plaintiff during one-on-one meetings and in front of other team members, he made disparaging remarks about Plaintiff's communication skills, both orally and written, that were due to her disability.

34. For example, Plaintiff did not hear Mr. Bakey calling her one day at work when her back was turned. Mr. Bakey proceeded to place himself in front of Plaintiff and told Plaintiff she did not hear him because she is deaf and he laughed at her.

35. For another example, Mr. Bakey made comments about Plaintiff's dyslexia condition, specifically stating that it ran in her culture. Plaintiff complained about this to Mr. Bakey's supervisor, and requested to be removed from his team, but that was not done or even entertained or discussed with Plaintiff as an option.

36. For another example, Mr. Bakey talked loudly when speaking to Plaintiff as if to mock her deafness. This embarrassed Plaintiff. Mr. Bakey also said that he had to be sure to be loud because of Plaintiff's hearing, and said this in front of others. Plaintiff responded by requesting that rather than be loud, Mr. Bakey simply look at her while he was speaking. Mr. Bakey did not oblige.

37. Plaintiff asked Mr. Bakey to stop treating her in a discriminatory manner and even suggested basic practices for the two to improve communication, said practices constituting accommodations to try to alleviate any perceived effect on her work performance stemming

5

or caused by Plaintiff's disabilities.

38. Mr. Bakey refused to consider any change in behavior, instead stating that he was the manager and he could do or say anything that he wanted. This hostile work environment continued, and Plaintiff continue to be denied training opportunities, new projects and faced harassment about taking vacation even though she was eligible through paid time off days.

39. Plaintiff complained to Human Resources and to Mr. Bakey's supervisor, Mr. Vince Garzarella, about the discrimination

40. Specifically, Plaintiff complained of a hostile work environment.

41. Defendant's HR representative spoke to Mr. Bakey and Mr. Garzarella about Plaintiff's concerns.

42. Defendant did nothing in response to Plaintiff's complaint.

43. Ms. Bailly spoke to Plaintiff's management team, including Mr. Bakey, about Plaintiff's concerns about Mr. Bakey.

44. Mr. Bakey advised Defendant's HR representative that he would work with Plaintiff to improve her written communication and that he would be mindful of making Plaintiff feel comfortable in discussing her opportunities for improvement.

45. Mr. Bakey, however, did not make good on this promise, and instead unleashed a campaign of harassment in retaliation for Plaintiff exercising her right to complain and contact Defendant's Human Resource Department.

46. Specifically, Mr. Bakey told Plaintiff that she should not have spoke to management and Human Resources to complain about him and because she did she should quit her job because he was "going to make it hell for [Plaintiff].

47. Plaintiff told Ms. Bailly and Mr. Garzarella, who was Mr. Bakey's supervisor, that she would

go to Mr. Garzarella if she had concerns and that she would attempt to seek other opportunities within Vanguard.

48. Ms. Bailly responded to Plaintiff by email dated February 28, 2013 stating that it was her understanding that Plaintiff spoke to others in Crew Relations throughout her tenure and that her records indicate that her prior concerns were addressed and that she did not realize there were other outstanding issues. Ms. Bailly went on to write in an email that "[W]hile I realize that times your work environment may be unpleasant, what you described to me is not unlawful and does not constitute a hostile work environment. When we concluded our conversation I agreed to speak with your management team regarding three specific concerns related to [Mr. Bakey] which I have done. I wish you the best in looking for other avenues within Vanguard, and if I can be of any assistance please do not hesitate to contact me."

49. Nobody assisted Plaintiff in looking for or obtaining other avenues within Defendant away from Mr. Bakey, and nothing was addressed by Ms. Bailly.

50. Plaintiff was unsatisfied with this response, feeling as though her concerns were not sincerely or adequately addressed.

51. Plaintiff and Mr. Bakey met on March 18, 2013.

52. On March 19, 2013, Plaintiff wrote to Mr. Bakey's supervisor, Vincent J Garzarella at 10:54 am in an email the following excerpted portions:

> Hello Vince – There may be typos and grammar errors within this note. Allow me to apologize in advance.
>
> I wished that you were in this meeting. Note, Steve did say that it would be my word against his in these matters.
>
> Also, you can tell that he is trying his best to retaliate against me. He stated that he did not like the fact that I spoke to others about him. A few months ago Steve even stated to me that I should NEVER (emphasis in original) go above his head.

7

> I do believe that I am being treated differently.
>
> When anyone on the team sends a note that has typos and/or grammar he does not say anything at all.
>
> But, if Cassie says anything that has to do with work and how she feels about certain things it's an issue, why?
>
> No one even respecting the fact that I'm partially deaf and I may have dyslexia. I guess I may in the incorrect area after all? Steve knew this about me and now just beating me up with communications. He even stated to me at one point "I write better than I speak," what was this suppose (sic) to mean. I just received a master's degree last year and had to process pages and pages of assignments. I did not receive negative feedback on my assigned papers.

53. Mr. Bakey was angry at Plaintiff that Plaintiff complained about him.

54. On March 20, 2013, Mr. Garzarella briefly met with Plaintiff and the outcome of the meeting was instruction from Mr. Garzarella for Plaintiff to work with Mr. Bakey and focus on Plaintiff's professional growth. Mr. Garzarella told Plaintiff at the end of the short meeting that he had to leave for another meeting.

55. Mr. Garzarella wrote an email to Plaintiff on March 20, 2013 that stated "Cassie, It's not about doing things differently – it's about working with Steve to focus on your professional growth."

56. Plaintiff was not satisfied with this response, as it completely failed to address and ignored her mention of her deafness and dyslexia, and lacked any meaningful interactive discussion on accommodations.

57. Plaintiff then received an e-mail from Joanne Dollarton on March 21, 2015 to which Mr. Garzarella was copied.

58. In that e-mail, Ms. Dollarton wrote to Plaintiff that she had a conversation with Mr. Garzarella about Plaintiff's conversation with Mr. Bakey, and that since Mr. Garzarella said he was going to meet with Plaintiff, she was not going to meet with Plaintiff.

8

59. Ms. Dollarton also wrote that if Plaintiff felt like there was no resolution to the situation then she would meet with Plaintiff and Mr. Garzarella, but that if Plaintiff felt that there was a resolution, "we wouldn't have to meet."

60. Plaintiff responded to the March 21, 2015 e-mail from Ms. Dollarton on March 21, 2013 at 7:06 AM and wrote as follows, excerpted:

> Vince stated to me to accept Steve's meeting invite's (since he is my manager); as well as "working with Steve to focus on your professional growth."
>
> The meeting was quick. I will accept Steve's invites and put my best foot forward. As Vince has stated within the meeting "Steve and I are here and must work together." I stated to Vinice prior to our meeting that I did not want to be a pest.

61. Plaintiff thanked Ms. Dollarton and Mr. Garzarella, who was copied on the e-mail, and stated that "[A]llow Steve and I to take things one step at a time. I will write items down and present them to Vince at our skip level if need be in April."

62. Plaintiff did not write about any discussions she had with Mr. Garzarella about accommodations or an interactive dialogue about accommodations. Those discussions did not take place.

63. Mr. Bakey continued to harass Plaintiff in retaliation for her complaining about him.

64. On April 2, 2013 Plaintiff submitted a complaint to the Open Channel forum provided by Defendant whereby, among other things, she complained about ongoing retaliation from Mr. Bakey.

65. Managing Director Kathy Gubanich of Defendant responded to Plaintiff's Open Channel communication on April 2, 2013, and recommended that Plaintiff contact a member of Ms. Gubanich's staff, Paul Slowik, who she advised she made aware of Plaintiff's inquiry and that he would be happy to meet with Plaintiff to assist.

66. In a Skip-Level Meeting Prep Form dated April 22, 2013, Plaintiff wrote in response to the

9

question numbered two "Please describe what aspect of your current role you like least" as follows:

> I truly believe that some members of VG would like me to be dismissed from the organization and would like very much for me to be broken. I would like to speak to others about moving myself from RKS in general and move on to something else.

67. Plaintiff was referring to Mr. Bakey

68. Defendant did not engage in any meaningful or interactive discussions with Plaintiff in order to accommodate her.

69. The harassment from Mr. Bakey continued and worsened.

70. On September 3, 2013, Plaintiff wrote to Mr. Slowik in an email that Mr. Bakey is "trying so hard to remove [her] from his team or even Vanguard."

71. In that same email, Plaintiff also excerpted and summarized what she had previously written to Mr. Bakey, including but not limited to the following:

> Steve I must state that I was offended when you mentioned my dyslexia. I know I mention this to you in the past, however, you stated to me that my communication is not good at all and that it will affect my performance. I stated to you that in the years that I have been on your staff and had other clients, that you never pressed me so much on this. You then stated that it was "more apparent now" and it was due because of my disease that cannot be cured. This is stating to me that because I have dyslexia, that this will most likely hurt me in future endeavors. You stated that since it's no cure, that I have to make due because communication is all around and would not be able to continue on like this. . . . You are now using my dyslexia against me.

72. Mr. Slowik responded one week later on September 10, 2013 and apologized for the delayed response. He wrote that he thought about two options and that he would be happy to meet with Plaintiff or to identify a mentor for Plaintiff to use as a sounding board.

73. Plaintiff responded in an email dated September 18, 2013 to Mr. Slowik where she wrote that she "cannot work in this environment; it's very, very hostile."

74. In the e-mail, Plaintiff made a list of nineteen items she wanted Mr. Slowik to know,

including item number 17 which stated "I'm partially deaf in one ear and he states to me that I have to deal with it, there's not much sympathy that he can give to me. But, if I do not hear what he says he thinks that I'm ignoring him or being sarcastic." She was referring to Mr. Bakey.

75. Mr. Slowik responded via email on September 22, 2013 and wrote that he "was aware of some of the items [Plaintiff] mentioned and know that they have previously been investigated and addressed. However, if these issues persist, I think the best option and appropriate next step is to meet with Dena Bailly to provide just a bit more detail so we can properly look into the issues you raised."

76. Plaintiff was not satisfied with this response as it did continued to not address her request for a reasonable accommodation.

77. Moreover, Plaintiff had previously gone to Ms. Bailly and the response she received was not adequate to address her concerns.

78. Mr. Bakey issued Plaintiff her 2013 performance evaluation, which was unfairly negative and referred to Plaintiff's disabilities as a factor in her performance.

79. Mr. Bakey told Plaintiff that because she went to complain about him to Human Resources and went above his head, he was going to give her a negative performance evaluation. He said to Plaintiff "Remember, I do your appraisal at the end of the year."

80. Plaintiff viewed that as a threat and questioned him about it.

81. Mr. Bakey told one of Plaintiff's clients that she had dyslexia and bad communication skills and that client terminated Plaintiff from working for it.

82. Plaintiff's new supervisor, Mary Beth Becker, came aboard supervising Plaintiff in or around November, 2013, and used the 2013 performance evaluation conducted by Mr. Bakey to

deny Plaintiff training opportunities and assigned project opportunities.

83. The retaliatory harassment escalated and continued and resulted in an unfair performance evaluation that listed by disabilities as a causative factor.

84. Even though Plaintiff eventually obtained a new supervisor, the new supervisor relied on Mr. Bakey's negative retaliatory performance evaluation and that affected Plaintiff's future performance ratings and her new supervisor's perceptions of her as an employee, making it such that Plaintiff could no longer succeed at Vanguard.

85. All Plaintiff wanted or needed as an accommodation was to be placed in a different job away from the harassment.

86. Mr. Bakey told Plaintiff that if she made a request for another position, he would, when required to provide a recommendation/reference, say negative things bashing her so that she would not get a move.

87. The situation worsened to the point where Plaintiff was forced to leave her employment due to her medical conditions on April 14, 2014 and as of the date of this filing has not returned.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

88. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

89. Because of her dyslexia and hearing loss, Plaintiff is substantially limited in the types of activities "that are of central importance to daily life," as required under the ADA. See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002).

90. Plaintiff notified Defendant of her disabilities.

91. Plaintiff is a member of protected class in that she is disabled.

92. Plaintiff was qualified to perform the job for which she was hired.

93. Plaintiff suffered adverse job actions, including, but not limited to a negative performance evaluation.

94. Similarly situated people outside of Plaintiff's protected class were treated more favorably

95. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

96. Defendant, by and through its agents and employees, engaged in unlawful disability discrimination against Plaintiff.

97. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

98. *Respondent superior* liability exists such that Defendant is strictly liable for the actions of its supervisors.

99. Defendant is not entitled to an affirmative defense.

100. As a result of Defendant unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – DISABILITY DISCRIMINATION
### VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

101. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

102. The aforementioned conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of disability.

103. Defendant, by and through its agents and employees, discriminated against Plaintiff on account of his disability in violation of the PHRA. 43 P.S. § 955(a).

## COUNT III – DISABILITY DISCRIMINATION
## VIOLATION OF THE ADA – FAILURE TO ACCOMMODATE

104. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

105. Plaintiff has disabilities: deafness and dyslexia.

106. Plaintiff informed Defendant of her condition.

107. Plaintiff requested an accommodation, on numerous occasions.

108. Accommodations were available that would have been effective and would not have posed an undue hardship to Defendant.

109. Defendant failed to provide an accommodation and failed to engage in an interactive process with Plaintiff as required under the ADA.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – DISABILITY DISCRIMINTATION
## PENNSYLVANIA HUMAN RELATIONS ACT – FAILURE TO ACCOMMODATE

110. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

111. Plaintiff has disabilities: deafness and dyslexia.

112. Plaintiff informed Defendant of her condition.

113. Plaintiff requested an accommodation, on numerous occasions.

114. Accommodations were available that would have been effective and would not have posed an undue hardship to Defendant.

115. Defendant failed to provide an accommodation and failed to engage in an interactive process with Plaintiff as required under the PHRA.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT V – DISABILITY DISCRIMINTATION
### ADA – RETALIATION

116. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

117. Plaintiff engaged in protected activity when she complained about a hostile work environment based on her disability and made requests for accommodations and advised Defendant of ongoing retaliation she suffered.

118. Plaintiff suffered adverse employment actions from the Defendant, including a negative performance evaluation, lack of training and opportunities, and a constructive discharge of her employment.

119. There exists a causal connection between the protected activity and the adverse employment actions.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT VI
### PENNSYLVANIA HUMAN RELATIONS ACT – RETALIATION

120. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

121. Plaintiff engaged in protected activity when she complained about a hostile work environment based on her disability and made requests for accommodations and advised Defendant of ongoing retaliation she suffered.

122. Plaintiff suffered adverse employment actions from the Defendant, including a negative

performance evaluation, lack of training and opportunities, and a constructive discharge of her employment.

123. There exists a causal connection between the protected activity and the adverse employment actions.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII
## ADA – HOSTILE WORK ENVIRONMENT

124. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

125. The conduct Plaintiff suffered as described above from her supervisor was unwelcome.

126. The conduct Plaintiff suffered as described above from her supervisor was because of her disability.

127. The conduct Plaintiff suffered as described above was severe or pervasive enough to alter Plaintiff's employment and in fact did alter Plaintiff's employment.

128. The conduct Plaintiff suffered as described above is imputable to the Defendant, who had knowledge of the conduct and failed to take prompt and remedial action to remedy the conduct.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VIII
## PHRA – HOSTILE WORK ENVIRONMENT

129. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

130. The conduct Plaintiff suffered as described above from her supervisor was unwelcome.

131. The conduct Plaintiff suffered as described above from her supervisor was because of her disability.

132. The conduct Plaintiff suffered as described above was severe or pervasive enough to alter Plaintiff's employment and in fact did alter Plaintiff's employment.

133. The conduct Plaintiff suffered as described above is imputable to the Defendant, who had knowledge of the conduct and failed to take prompt and remedial action to remedy the conduct.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court grant her the following relief against Defendant:

(a) Damages for past and future monetary losses as a result of Defendant's unlawful discrimination;

(b) Compensatory damages;

(c) Punitive damages;

(d) Liquidated damages;

(e) Emotional pain and suffering;

(f) Reasonable attorneys' fees;

(g) Recoverable costs;

(h) Pre and post judgment interest;

(i) An allowance to compensate for negative tax consequences;

(j)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of ADA and the PHRA.

(k)     Order Defendant ADA to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for her adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW, LLC**

Date: September 29, 2015

**By:** _/s/ David M. Koller_
David M. Koller
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
215-575-0826 fax
*Counsel for Plaintiff*